UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ADP INVESTOR COMMUNICATION
SERVICES, INC.,

                            Plaintiff,

       - against -

IN HOUSE ATTORNEY SERVICES, INC.
and CRAIG OSBOURNE,

                  Defendants.
-------------------------------------------------------------X

**MEMORANDUM
OPINION** and **ORDER**

CV 04-05418 (TCP)

PLATT, District Judge:

        Defendants In House Attorney Services, Inc. ("In House") and Mr.

Craig Osbourne ("Osbourne") (collectively "Defendants") move to dismiss

Plaintiff ADP Investor Communication Services, Inc.'s ("ADP") Amended

Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2).  In the

alternative, Defendants move this Court to dismiss counts two and three of the

Amended Complaint pursuant to Rule 12(b)(6).

        ADP brings three claims: i) breach of contract against In House; ii)

unjust enrichment against In House; and iii) conversion against both Defendants.

        For the following reasons, Defendants' motions are **DENIED**.

**Factual Summary**

1

ADP is a Delaware corporation with its principal place of business in Edgewood, New York. (Am. Compl. ¶ 4.) In House is a California corporation and has its principal place of business in Los Angeles, California. ( Id. ¶ 5.) Osbourne is the president and founder of In House and is a resident of the State of California. (Id. ¶ 6.)

In early 2003, In House submitted and won a bid to print proxy materials and prepare the same for mailing on behalf of the debtors of Peregrine Systems, Inc. ("Peregrine"), a corporation that had filed for bankruptcy in the U.S. Bankruptcy Court in the District of Delaware. (Id. ¶¶ 10, 11.)

At some point during the Spring of 2003, In House telephoned Mr. Aleck Masouas, an employee at ADP's Edgewood, New York facility, to inquire as to whether ADP was interested in handling the task of mailing the proxy materials to the Peregrine shareholders. (Id. ¶ 11.) The Defendants' version as to who initiated the contract differs. According to Osbourne, after In House was awarded the contract to produce the proxy materials, Peregrine's counsel communicated with Osbourne to inform him that ADP had been chosen to mail the Peregrine materials. (Osbourne Aff. ¶ 10.)

In any event, before the Parties reached an agreement, In House and ADP's representatives located at ADP's Edgewood, New York headquarters

exchanged several phone conversations and emails. (Am. Compl. ¶ 12.) ADP anticipated that the cost to mail the Peregrine materials would be high. (Id. ¶ 13.) Therefore, as ADP was aware that Peregrine was in financial straits, ADP requested pre-payment. (Id.) In House wired the sum of $835,070 to ADP as pre-payment. (Id.) ADP agreed to reimburse In House the difference between the pre-payment and the actual cost of the mailings after they completed the project. (Id.)

In House prepared the Peregrine materials and then shipped them to ADP's Edgewood, New York headquarters in June, 2003. (Am. Compl. ¶¶ 15-16.) ADP in turn processed and mailed these materials to the Peregrine shareholders. (Id. ¶ 16.) ADP also mailed reminder letters to the Peregrine shareholders. (Id.) After completing the Peregrine project, ADP calculated that In House incurred charges totaling $570,407.20. (Am. Compl. ¶ 17.)

Keeping with their agreement, ADP wired to In House a refund of $277,699.89 on or about September 11, 2003. (Id. ¶ 18.) According to ADP, this amount was incorrect as they later calculated that the actual amount due to In House was only $264,662.80. (Id.) ADP then wired a second refund check for the "correct" amount to In House on or about January 14, 2004. (Id.)

Osbourne acknowledged in a telephone call that In House received two checks. (Id. ¶ 19; Osbourne Aff. ¶ 19.) Osbourne also acknowledged that during a phone conversation with a member of ADP's Finance Department in

May, 2004, he stated that he thought the refund amount was larger than expected. (Am. Compl. ¶ 19.)  Osbourne and In House, however, did not return the first payment to ADP, despite repeated requests to do so. (Id. ¶¶ 19-21.)

Osbourne contends that it is his understanding that the two payments were installment payments and that together they equaled the accurate amount of monies owed to In House. (Osbourne Aff. ¶ 18.)

ADP alleges that this Court has personal jurisdiction over the Defendants under New York's long arm statute, N.Y. Civ. Prac. L. & R. ("CPLR") § 302(a)(1), in that the Defendants have transacted business in New York and ADP's claims arise out of Defendants' purposeful business activity in New York. (Am. Compl. ¶ 9.)  In addition, on its claim for conversion, ADP argues that this Court has personal jurisdiction over Defendants under both CPLR §§ 302(a)(1) and 302(a)(3). (Id.)

**Legal Standard**

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden to establish jurisdiction. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003); *Freeplay Music, Inc. v. Cox Radio, Inc.*, No. 04-5238, 2005 U.S. Dist. LEXIS 12397, *5 (S.D.N.Y. June 23, 2005).  "A plaintiff must establish the court's jurisdiction with

respect to each claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). Where no jurisdictional discovery has been conducted - as is the case here - the plaintiff need only establish a *prima facie* case, and allegations of jurisdictional fact must be construed in a light most favorable to the plaintiff. *See CutCo Indus. Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). The motion may be denied if those allegations suffice as a matter of law. *Magnetic Audiotape*, 334 F.3d at 206.

In order to prevail under Rule 12(b)(6), a defendant must show that the plaintiff can prove no set of facts in support of its claim which would entitle plaintiff to relief. *Alnwick v. European Micro Holdings Inc.*, 281 F. Supp. 2d 629, 637 (E.D.N.Y. 2003). Courts must accept as true all of the factual allegations set out in the complaint, and draw inferences from those allegations in the light most favorable to the plaintiff. *Id.* "Under Rule 12(b)(6), a court 'must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Id.* (*quoting Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir. 2000), *abrogated on other grounds*, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Unlike a motion to dismiss pursuant to Rule 12(b)(6), deciding a Rule 12(b)(2) motion necessarily requires resolution of factual matters outside the

pleadings:

> In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion. If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a *prima facie* showing of jurisdiction through its own affidavits and supporting materials. Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a *prima facie* showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion.

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (citations omitted); *see also Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995). Accordingly, this Court will consider Craig Osbourne's affidavit (as well as affidavits submitted by ADP) for the purpose of deciding whether this Court has jurisdiction over In House.

## Discussion

A. <u>Whether this Court may exercise personal jurisdiction over the Defendants</u>.

"Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits." *CutCo Indus.*, 806

F.2d at 365.  ADP asserts that personal jurisdiction over In House is proper under

CPLR § 302(a)(1):

> § 302.  Personal jurisdiction by acts of non-domiciliaries
>
> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; . . .

N.Y. Civ. Prac. L. & R 302(a)(1).

In this Circuit, courts consider the following factors when deciding

whether an out-of-state defendant transacts business in New York:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after the contract is executed with a New York business, the defendant visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) whether the contract contains a choice-of-law clause; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Agency Rent A Car Sys. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)

(internal citations omitted).  Notably, none of these factors are dispositive, and

courts must ultimately decide whether personal jurisdiction exists based on the

"totality of the circumstances." *Id.*  As such, "'precedents under § 302 are of

limited value.'" *Cooper, Robertson & Partners, L.L.P. v. Vail*, 143 F. Supp. 2d

367, 370 (S.D.N.Y. 2001) (*quoting Berk v. Nemetz*, 646 F. Supp. 1080, 1085 (S.D.N.Y. 1986)).  The overriding concern, then, is whether the defendant has "purposefully  avail[ed] [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Cutco Indus.*, 806 F.2d at 365 (internal quotations marks omitted).

ADP also contends that this Court may exercise personal jurisdiction over Osbourne on its conversion claims. "Although jurisdiction over a corporation is normally premised upon jurisdiction over an individual defendant through agency principles, the opposite is also possible: a corporation can act as the agent of a corporate officer so that its activities here can subject the officer to jurisdiction under CPLR § 302(a)(1)." *Champion Motor Group v. Visone Corvette*, 992 F. Supp. 203, 206 (E.D.N.Y. 1998).  "Before a defendant corporation may be found to be acting as the agent of a corporate officer, courts require that the officer be a 'primary actor' in the transaction carried out by the corporation. *Id.*  "To make a *prima facie* showing of 'control,' a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation." *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998).

The four criterion for personal jurisdiction under CPLR § 302(1)(a) discussed in *Agency Rent A Car Sys.*, do not apply to the Defendants, except that ADP performed its end of the agreement in New York.  ADP asserts, however, that the following facts are nonetheless indicative of Defendants' purposeful engagement in New York activities: i) In House initiated the Peregrine mailing project by contacting an employee and agent of ADP to negotiate the contract;[1] ii) Osbourne made several phone calls and sent e-mails to ADP representatives at the Edgewood, New York facility during the contract negotiations; iii) In House shipped the Peregrine materials to ADP's processing facility in New York; and iv) the performance of the contract occurred in New York.  In sum, ADP contends that the Defendants actively sought to do business in New York by contacting, and contracting with, a New York firm.

Defendants argue that, to the extent that there was a business transaction with the Defendants, it was a "one shot deal." (Def.'s Mem. Mot.

---

[1] Osbourne states that counsel from Peregrine initiated the contract with ADP. (Osbourne Aff. ¶ 10.) In response, ADP submitted an affidavit from Mr. Michael J. Scarito, ADP's Director of Finance, who states conclusively that it was In House who first approached ADP, and not the other way around. (Scarito Aff. ¶ 5.)  This Court does not discount Osbourne's belief as sworn to in his affidavit.  Nonetheless, as this is a motion to dismiss for lack of personal jurisdiction, this Court must interpret the conflicting facts and affidavits in a light most favorable to ADP. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985); *see also Bradley v. Staubach*, No. 03-4160, 2004 U.S. Dist. LEXIS 6584, *9 (S.D.N.Y. April 13, 2004) ("a court may consider materials outside the pleadings, but must credit the plaintiff's averments of jurisdictional facts as true.").  Therefore, for the purposes of this motion, this Court must accept ADP's allegation that the Defendants initiated contact with ADP.

Dismiss at 9.)  Defendants also argue that the "only contacts with New York with respect to ADP were a few phone calls and a few emails." (Id.)

In House's "one shot deal" argument is without merit.  "A single transaction of business is sufficient to give rise to jurisdiction under CPLR § 302(a)(1), even where the defendant never enters the state, *if the claim arises out of the transaction*." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000) (emphasis added).  Here, ADP's claim "arises out of the transaction" as ADP is seeking the return of funds that it believes it erroneously sent to the Defendants as part of the Peregrine project.  Furthermore, the "one shot deal" between the Parties did not occur overnight, but rather developed over time through several phone calls and e-mails.  "Any contract negotiations evidencing a purposeful invocation of the laws of the forum state are transactions of business for purposes of  New York's long arm statute." *Catsimatidis v. Innovative Travel Group, Inc.*, 650 F. Supp. 748, 751 (S.D.N.Y. 1986).  Face to face negotiations in New York are not required. *Id.*

Responding to Defendants' second argument, that telephone calls and emails sent into New York by a non-domiciliary defendant are insufficient to establish jurisdiction, ADP correctly points out that in an age of advanced communications technology, physical presence of the defendant in New York is no longer dispositive. *Agency Rent A Car Sys.*, 98 F.3d at 30 ("Indeed, we question

whether, in an age of e-mail and teleconferencing, the absence of actual personal visits to the forum is any longer of critical consequence.")  ADP also cites *Courtroom TV Network v. Focus Media*, 264 A.D.2d 351, 695 N.Y.S.2d 17 (1st Dep't 1999), where the court found personal jurisdiction over a California corporation in a breach of contract suit even though the parties negotiated the entire contract by telephone and correspondence.  The defendant, an advertising firm, with no offices, employees or an agent for the purpose of service of process in New York, sent materials into New York to be reviewed and ultimately broadcast on plaintiff's cable television station. 264 A.D.2d at 352, 695 N.Y.S.2d at 18.  The court held that personal jurisdiction was proper under CPLR § 302(a)(1), for two reasons.  First, defendant "intended the performance of the contract to occur in New York, " and second, because the defendant created the television advertisements later broadcast by the plaintiffs, it had a "'crucial role' in creating the substance of the transaction, amounting to doing business in New York."  264 A.D.2d at 353, 695 N.Y.S.2d at 19.

Similarly, in this case, In House created the Peregrine materials, which were then shipped to ADP's Edgewood, New York facility for processing and mailing.  From New York, ADP sent the materials to Peregrine's shareholders. The performance of the contract, as expected, occurred entirely in New York.  The holding in *Courtroom TV* demonstrates that in a breach of contract case where the

performance of the contract takes place in New York, a finding that the non-New York domiciliary also held telephonic and electronic communications with the New York corporation is enough to satisfy the transacting business test.

Although they concede that ADP's arguments and case law are correct on these two issues, Defendants argue that in all of the cases ADP cites in their opposition papers, the defendants involved had much greater connections to New York. (Defs.' Reply Mem. at 3-4.)  For example, Defendants point out that in *Citigroup*, the defendant also maintained a comprehensive, interactive website and solicited customers in New York with a direct mailings, which the court found to be indicative of soliciting business. 97 F. Supp. 2d at 565-66.

Defendants can cite New York personal jurisdiction cases *ad infinitum*, pointing out the differences between the facts of those cases with the facts in this case.  In the end, however, courts must determine on an individual basis whether or not the contacts in a particular case satisfy the New York long-arm statute "by an analysis of the totality of the circumstances." *Premier Lending Servs. v. J.L.J. Assocs.*, 924 F. Supp. 13, 15 (S.D.N.Y. 1996).  Under "the totality of the circumstances test analysis," this Court finds that ADP has thus far made a *prima facie* showing personal jurisdiction over the Defendants pursuant to CPLR § 302(a)(1).  Jurisdiction is properly predicated on the following factual grounds: i) the substantial performance of the contract occurred in New York; ii) Defendants

created, then mailed into New York, the Peregrine materials; iii) Osbourne communicated with ADP by telephone and email on several occasions in connection with the subject contract; iv) ADP's claim arises out of the single contract with the Defendants; and v) Defendants initially contacted ADP, a New York firm, in order to complete its contract with Peregrine. Collectively these facts are enough to defeat Defendants' Rule 12(b)(2) motion as to both In House and Osbourne.

After determining that jurisdiction is proper under New York's long-arm statute, courts must assess whether asserting personal jurisdiction over a defendant does not violate their rights under the Fourteenth Amendment's due process clause. *See A.I. Trade Fin. v. Petra Bank*, 989 F.2d 76, 82 (2d Cir. 1993). Keeping in mind that "satisfaction of the section 302(a)(1) criteria will generally meet federal due-process requirements," *Kelly v. MD Buyline, Inc*., 2 F. Supp. 2d 420, 431 (S.D.N.Y. 1998), this Court finds that the due process requirements are satisfied in this case notwithstanding Defendants' decision to forego addressing this issue.

In this Circuit, the due process analysis begins with two questions in order to determine whether the state has "minimum contacts" with defendant "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Chaiken v. VV Publ. Corp.*, 119 F.3d 1018, 1027 (2d

Cir. 1997) (*quoting Calder v. Jones*, 465 U.S. 783, 788 (1984) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, (1940) and *International Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945)). First, whether the plaintiff's claim arises out of or relates to defendant's contacts with the forum state; and second, whether the plaintiff has shown that the defendant has purposefully availed himself of the privilege of doing business in the forum state. *Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998). "Once minimum contacts have been established, the reasonableness of the exercise of jurisdiction must be determined by an evaluation of several factors including 'the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.'" *A. I. Trade Fin.*, 989 F.2d at 83 (*quoting Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)).

Defendants here do not directly address ADP's due process arguments, but instead contend that since personal jurisdiction over defendants under New York's long-arm statute is unattainable, this Court need not reach the due process issue. (Defs.' Mem. Mot. Dismiss at 6, n.3.) This Court disagrees and finds that ADP has met its burden in demonstrating that exercising personal jurisdiction over the defendants would not violate their due process rights. The Amended Complaint makes clear that the three causes of action arise out of the agreement Defendants negotiated with ADP with respect to the Peregrine material and the agreement's subsequent execution in New York. Accepting the facts in a

light most favorable to ADP for the purpose of deciding this motion, ADP properly asserts that the Defendants "purposefully availed" themselves of doing business in New York by initiating contact with ADP to handle the Peregrine mailing.

Finally, Defendants could have reasonably foreseen being haled into court in New York when they engaged ADP, a New York company, to complete its winning bid on the Peregrine project. *See Arch Specialty Ins. Co. v. Entm't Specialty Ins. Servs.*, No. 04-1852, 2005 U.S. Dist. LEXIS 4746, *18 (S.D.N.Y. 2005) (finding that defendants could have reasonably foreseen being haled into court in New York when they retained the services of a broker to procure an insurance policy from a company working out of a New York office). For all these reasons, exerting jurisdiction over the Defendants will not violate "traditional notions of fair play and substantial justice."

B. <u>Whether Personal Jurisdiction Exists Over ADP's Conversion Claim</u>.

This Court agrees with ADP that the extension of jurisdiction over the Defendants for ADP's conversion claim is proper under this section for the same reason personal jurisdiction is justified under CPLR § 302(a)(1) for its breach of contract and unjust enrichment claims, as described above. (Pl.'s Opp. Mem. at 13.) *Fashion Fragrance & Cosmetics v. Croddick*, No. 02-6294, 2003 U.S. Dist. LEXIS 2220, *18-19 (S.D.N.Y. Feb. 11, 2003) (finding that unjust

enrichment and conversion claims arise out of the same alleged activity found to have conferred jurisdiction under the transacting business prong of Rule 302(a)(1)).

C. Whether Plaintiff Has Stated A Claim for Unjust Enrichment.

In order to state a claim for unjust enrichment under New York law, "a plaintiff must show that (1) defendant was enriched, (2) the enrichment was at the plaintiff's expense and (3) the circumstances were such that equity and good conscience require defendant to make restitution." *Violette v. Armonk Assocs., L.P.*, 872 F. Supp. 1279, 1282 (S.D.N.Y. 1995). ADP claims that In House refuses to return the first wire transfer of funds sent allegedly in error, and consequently, In House received services "greatly in excess of what it has actually paid." (Amend. Compl. ¶¶ 32, 33; Pl.'s Opp. Mem. at 15.)

Defendants argue that ADP cannot sustain its second claim for unjust enrichment because unjust enrichment is an action sounding in quasi-contract. (Defs.' Mem. at 12.) ADP's unjust enrichment claim is therefore precluded because, "[u]nder New York law, 'the existence of an express contract between the plaintiff and [defendants] governing the particular subject matter of its claim for unjust enrichment precludes the plaintiff from maintaining a cause of action sounding in quasi-contract against [defendants].'" *Strojmaterialintorg v.*

*Russian Am. Commercial Corp*., 815 F. Supp. 103, 106 (E.D.N.Y. 1993) (*quoting*

*Metropolitan Elec. Mfg. v. Herbert Const*., 183 A.D.2d 758, 583 N.Y.S.2d 497,

498 (2d Dep't 1992).

 ADP responds that their claim for unjust enrichment is different in

that the cases cited by the Defendants involve an express written contract, whereas

in this case "a series of phone calls and emails" and invoices sent to In House

constitutes the contract. (Pls.' Opp. Mem. at 16.)  Indeed, any mention of an

express, written contract between the Parties is absent from the Amended

Complaint.

 Defendants reply that the existence of either an oral or written

contract precludes a claim for unjust enrichment. *See, e.g.*, *Dimario v. Coppola*, 10

F. Supp. 2d 213, 226 (E.D.N.Y. 1998) ("A full, and clear oral agreement will also

bar a claim for unjust enrichment in the absence of overreaching.").  This response

is fruitless as ADP is not arguing that its quasi-contract claim should stand because

it claims that the contract it had with the Defendants was an oral (not written)

agreement.  Rather, ADP's argument is that regardless of the manner in which the

agreement with the Defendants manifested itself, it is not an *express* contract, that

is, its meaning is unclear and ambiguous. *See* Black's Law Dictionary 620 (8th ed.

2004) ("Clearly and unmistakably communicated; directly stated.").  As such,

"[a]n alternative theory of unjust enrichment is permitted where the existence or

enforceability of a contract is in dispute." *Louros v. Cyr*, 175 F. Supp. 2d 497, 514

(S.D.N.Y. 2001).

This Court has covered this ground before:

> The undersigned is reluctant at this stage in the litigation to dismiss
> Plaintiff's claim for unjust enrichment given the presence of various
> disputed facts, particularly those concerning [defendant's] alleged
> termination of the contract. The preclusion of Plaintiff's unjust
> enrichment claim at this early juncture, before any substantive
> discovery has occurred, would leave Plaintiff with virtually no relief
> sounding in quasi-contract if, at a later stage, the [contract] was found
> to be invalid.

*CosmoCom, Inc. v. Marconi Communs. Int'l, Ltd.*, 261 F. Supp. 2d 179, 187

(E.D.N.Y. 2003) (Platt, J.).

Accordingly, this Court will not preclude ADP at this time from

going forward from with its unjust enrichment claim given the factual dispute

over whether the Parties had an express contract.


D. <u>The Conversion Claim Fails as a Matter of Law</u>.

Defendants next argue that ADP has failed to plead a proper

conversion claim.

Defendants concede that New York law controls, because if a tort

took place it would have been felt by ADP in New York. *See Hutton v. Priddy's

Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 433 (S.D.N.Y. 2003) (holding that

where New York is the locus of the tort, New York law governs the cause of action.).  Under New York law, "conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Louros v. Cyr*, 175 F. Supp. 2d 497, 515 (S.D.N.Y. 2001) (*quoting Meese v. Miller*, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (N.Y. App. Div. 1981)).  In order to plead a viable claim for conversion, a plaintiff must allege that they demanded return of the property was made and were met with refusal. *Id*.

ADP responds that the conversion claim is different from the breach of contract claim as the former is against both In House and Osbourne. ADP alleges that its employees contacted Osbourne in an effort to retain possession and control over the allegedly mistaken wire transfer, and that Osbourne refused to return the same. (Am. Compl. ¶ 19.)  Therefore, Osbourne, as well as In House, is individually liable to ADP for allegedly converting the contested funds.  ADP has properly pled a claim for conversion separate and distinct from its breach of contract claim.[2]

---

[2] This Court did not consider ADP's cites to Osbourne's affidavit (Pl.'s Opp. Mem. at 18) in evaluating their argument that their conversion claim is separate and distinct from their breach of contract claim, as doing so would be improper. *See Alnwick v. European Micro Holdings Inc.*, 281 F. Supp. 2d 629, 637 (E.D.N.Y. 2003).  Standing alone, ADP's assertions in their Amended Complaint (Am. Compl. ¶ 19) are enough to sustain their conversion claim.

Defendants argue that ADP's conversion claim must nevertheless fail for two reasons: i) under New York law, a claim for conversion will not lie where the same damages are being sought for a breach of contract, and ii) that under New York law a conversion claim is unavailable for cases of mistaken payment. (Defs.' Mem. Mot. Dismiss at 11-13.)

Defendants cite *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 452 N.Y.S.2d 599 (1st Dept. 1982), for the proposition that in New York a conversion claim will not lie where the damages sought are the same damages the plaintiff seeks to recover on a breach of contract claim. The holding in *Peters Griffin* is inapposite to the facts of this case. Briefly, in *Peters Griffin*, the plaintiff contracted with the first defendant to be their national sales representative. The plaintiff alleged that the first defendant contracted instead with the second defendant, and as a result, the plaintiff claimed that the first defendant owed them certain commissions totaling over $15,000. 88 A.D.2d at 883, 452 N.Y.S.2d at 600. The court held that an action for conversion cannot be validly maintained where damages "are *merely* being sought for breach of contract." 88 A.D.2d at 884, Id. at 600. (emphasis added.) The court went on to state that the plaintiff's conversion claim failed because "plaintiff has *never* had ownership, possession or control of the money constituting the . . . commissions . . . therefore no action in conversion may be brought against [defendants] on that

theory." *Id.* (emphasis added.)

In this case, ADP claims the Defendants converted the initial $277, 699.89 *after* ADP wired to them the funds. (Am. Compl. ¶ 37.) That is, ADP alleges that it had "ownership, possession or control" of the $277, 699.89 before sending the money to the Defendants. As such, ADP's conversion claim does comport with the requirements for a conversion claim in New York as set forth in the *Peters Griffin* case.

Defendants also cite language in *Jewish Natl. Fund, Inc. v. Garland*, No. 83-7796, 1985 U.S. Dist. LEXIS 23715, *7 (S.D.N.Y. Jan. 3, 1985), in support of its second argument, that under New York law a conversion claim for mistaken payment may not stand: "[A] mere claim of monies paid out by mistake based on contract will not support an action for conversion." (Defs.' Reply Mem. at 8-9.) The Defendants use of this language is disingenuous, as the sentence is preceded by the caveat that "although money may be the subject of a conversion, the money must constitute a specifically identifiable fund which defendant was under a duty to deliver to plaintiff." 1985 U.S. Dist. LEXIS 23715 at *7; *see also Marine Midland Bank v. John E. Russo Produce Co.*, 65 A.D.2d 950, 952, 410 N.Y.S.2d 730, 734 (4th Dep't 1978). Therefore, "an action will lie under New York law for conversion of money where there is an obligation to return or otherwise treat in a particular manner the specific money in question . . .

21

*and that money is specifically identifiable*." *Vanderbilt Univ. v. Dipsters Corp.*, No. 84-7215, 1986 U.S. Dist. LEXIS 20533, *8 (S.D.N.Y. September 17, 1986) (emphasis added).

Courts have discussed what is meant by an "identifiable fund." The identification of a named bank account has been found to satisfy the identifiable fund requirement. *Lenczycki v. Shearson Lehman Hutton, Inc.*, 238 A.D.2d 248, 656 N.Y.S.2d 609 (1st Dep't 1997) (holding that where the plaintiff names a "specific, named bank account," the funds were sufficiently identifiable). Also, the conversion claim must be for recovery of a particular and "definite sum of money, although the specific bills are not identified . . . ." *Jones v. McHugh*, 37 A.D.2d 878, 325 N.Y.S.2d 102 (3d Dep't 1971).

In this case, ADP alleges in its Amended Complaint that it seeks "a specifically identifiable sum of money . . . sent by wire transfer from [ADP's] account with JP Morgan Chase in New York to In House's bank account at California Bank & Trust c/o ILCS." (Am. Compl. ¶ 38.)[3] ADP also states the exact amount of the wire transfer, $277,699.89. (Id. ¶ 18.) This Court finds then

---

[3] In their Reply papers, Defendants disagree that ADP has identified a specifically identifiable fund because in all of the cases ADP cites in support of its conversion claim, the funds involved were part of a joint bank account. *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 626 N.Y.S.2d 472 (1995); *Payne v. White*, 101 A.D.2d 975, 477 N.Y.S.2d 456 (1984). Defendants are correct; the cases cited by ADP do involve joint bank accounts. Defendants fail to show, however, how this fact alone is dispositive.

that ADP properly alleges an identifiable sum of money and therefore ADP's conversion claim does not fail as a matter of law.

## Conclusion

ADP has satisfied its burden by demonstrating that this Court may exercise personal jurisdiction over both Defendants and that its claims for unjust enrichment and conversion are adequately pled. Defendants' motion to dismiss ADP's Amended Complaint for lack of personal jurisdiction and its Rule 12(b)(6) motion to dismiss ADP's claims for unjust enrichment and conversion are therefore **DENIED**.[4]

**SO ORDERED**.

_/S/_____

Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
      August 18, 2005

---

[4] Notwithstanding the "possible" dispute of fact envisaged by this Court with regard to Plaintiff's "unjust enrichment" claim (*see supra* pp. 17-19), it seems quite clear from all of the facts presented to this Court thus far, that the Defendants are improperly (whether by reason of mistake, error, or otherwise) in possession of funds that belonged to and should be returned to ADP. If a list or accounting of expenses is all that is required, it should be requested and forwarded and the correct amount refunded, all forthwith. This Court should not be burdened by what appears to be a seemingly frivolous litigation. In order to ensure that it will not be, we are referring this matter to United States Magistrate Judge E. Thomas Boyle with the request that he resolve this alleged "legal" dispute as quickly as possible.